STATE EX REL. SCOLLARD, RESPONDENT, *v.* BOARD OF
EXAMINERS FOR NURSES ET AL., APPELLANTS.

(No. 3,587.)

(Submitted February 11, 1916.   Decided March 1, 1916.)

[156 Pac. 124.]

*Mandamus—Board of Examiners for Nurses—Public Office and
Officers—Good Moral Character—Evidence—Official Oath.*

Nurses—Board of Examiners—Public Office and Officers—Undertaking
on Appeal.
1.   Under Section 7196, Revised Codes, the board of examiners for
nurses, being a public office and its members public officers, is re-
lieved from filing a bond on appeal from a judgment compelling it
by writ of mandate to recommend to the governor an applicant for
certification as a registered nurse.

Same—Official Oath.
2.   The fact that Chapter 50, Laws of 1913, creating the board of
examiners for nurses, does not provide that the members thereof
take an official oath, cannot detract from their character as public
officers, since Section 1 of Article XIX of the Constitution, requiring
every public officer within the state to take the oath therein pre-
scribed, is self-executing.

Same—Good Moral Character—How Determined by Board.
3.   In its determination of the question whether an applicant for
registration as a nurse possesses the good moral character made a
prerequisite to certification by Section 9 of the Act, the board of ex-
aminers is not bound to accept affidavits of citizens deposing to such
good character as conclusive, but may hear evidence, to be produced
before it in such manner as it may choose to adopt, both in opposi-
tion to as well as in favor of the applicant.

Same—*Mandamus*—Does not Lie—When.
4.   In the absence of a clear showing that the board abused the
discretion lodged in it in determining whether relator was a proper
person to be recommended to the governor for certification as a
registered nurse, the writ of mandate did not lie.

Same—Character of Applicant—Evidence.
5.   Testimony touching the immoral character of the applicant, intro-
duced at a divorce proceeding to which she was a party, could right-
fully be taken into consideration by the board in passing upon the
question of her character.

*Appeal from District Court, Silver Bow County; J. B. Mc-
Clernan, Judge.*

APPLICATION by the State of Montana, on the relation of Alise
B. Scollard, for writ of *mandamus* against the Board of Exam-
iners for Nurses and the members thereof.   From a judgment
awarding a peremptory writ and an order denying a new trial,

respondents appeal. Judgment and order reversed and cause remanded, with directions to dismiss.

*Messrs. Geo. D. Pease, J. J. McCaffery* and *Percy Napton,* for Appellants, submitted a brief; *Mr. Pease* argued the cause orally.

In this proceeding the presumption of law is that the decision or judgment of the board was one of merit, that the board acted within its discretion and that the official duty has been regularly performed. (*San Luis Obispo County* v. *Gage,* 139 Cal. 398, 73 Pac. 174.) The duty devolves on the board to act, but if the board has discretion, and, in the exercise of that discretion has acted, the writ of *mandamus* does not lie to compel the board to act in a particular way or to exercise a particular discretion if there has been no abuse of the discretion exercised. (*State ex rel. Stuewe* v. *Hindson,* 44 Mont. 429, 436, 120 Pac. 485.) *Mandamus* will not issue to enforce a right which is in substantial dispute. (26 Cyc. 153; *Williams* v. *Smith,* 6 Cal. 91; *Davis* v. *Jewett,* 69 Kan. 651, 77 Pac. 704; *People* v. *Curtis,* 41 Mich. 723, 49 N. W. 923; *State* v. *Clark* (*State* v. *Tillyer*), 69 N. J. L. 609, 55 Atl. 690; *People* v. *Board of Canvassers,* 88 N. Y. App. Div. 185, 84 N. Y. Supp. 406; *State* v. *Hastings,* 10 Wis. 518.) Neither will *mandamus* lie to enforce a right which is conditional or incomplete by reason of conditions precedent which are to be performed by the petitioners. (26 Cyc. 154.)

The case of *Commonwealth ex rel. Scott* v. *Board of Education,* 187 Pa. 70, 41 L. R. A. 498, 40 Atl. 806, is on "all-fours" with the case at issue. The board of education in that case was clothed with the discretionary power to determine the qualifications of teachers. It exercised its right of discretion by disqualifying female teachers, and the court held that such action could not be disturbed in a *mandamus* proceeding. The general rule may be found in 26 Cyc. 283. (See, also, *Bailey* v. *Ewart,* 52 Iowa, 111, 2 N. W. 1009.)

*Messrs. Nolan & Donovan,* for Respondent, submitted a brief; *Mr. Louis P. Donovan* argued the cause orally.

Upon the hearing of the application for the writ of mandate in such cases, the court does not try the case *de novo,* but hears and determines it upon the record made before the board (*State* v. *Chittenden,* 112 Wis. 569, 88 N. W. 587; *Inglin* v. *Hoppen,* 156 Cal. 483, 105 Pac. 582, 585; *Board of Prison Commissioners* v. *De Moss,* 157 Ky. 298, 163 S. W. 183; *People* v. *Circuit Judge,* 36 Mich. 274), and the only question is whether or not the board has acted within its discretion, and in determining this question, the court can look only, to the showing that was made before the board upon which its order was necessarily based. Facts not appearing before the board naturally could not be made the basis for the order made by the board.

The statute requires that the applicant for registration shall make a satisfactory showing of her good character, but this is an *ex parte* showing. The statute does not permit that showing to be contradicted, makes no provision for charges being filed against the applicant, does not authorize the board to hear testimony against the applicant, nor permit any other person to furnish testimony respecting her character, either for or against her. It merely requires, as a condition precedent to her being admitted, that she shall furnish satisfactory evidence of her good moral character. It shows that the legislature contemplated that if she made a sufficient *ex parte* showing of her good character, then she should be registered, subject, of course, to the power of the governor upon recommendation of the board to revoke her certificate for any of the reasons set out in section 15. Such has been the holding of the courts under somewhat analogous statutes. (*State ex rel. Hallen* v. *Utah State Board,* 37 Utah, 339, 108 Pac. 347; *In re License,* 143 N. C. 1, 10 Ann. Cas. 187, 10 L. R. A. (n. s.) 288, 55 S. E. 635.)

If the court should be of the opinion that the board had a right to try, at the time of the nurse's application, the question of her good moral character, then the Constitution requires that a charge against her should be filed, and that she should

be advised of the nature and the cause of the accusation. (*State v. Kellogg,* 14 Mont. 426, 36 Pac. 957; *State* v. *Schultz,* 11 Mont. 429, 28 Pac. 643.) And the party accused must be given a right to be heard before she is condemned. (*State* v. *Schultz, supra.*) It is true that the cases above cited relate to the revocation of licenses already issued, but there can be no distinction in principle between the right of the accused to be heard in such cases, and the right to be heard when the accusation is made the basis of preventing the issuance of a license. In either case the purpose of the accusation is to deprive the accused person of a valuable right which she would otherwise have. This right should not be taken from her or denied her without due process of law. (*Gage* v. *Censors etc. Medical Society,* 63 N. H. 92, 56 Am. Rep. 492.)

The testimony of Pender is without value, because it does not prove, or tend to prove, the general character of the relatrix for morality. Aside from all other objections to it, it relates only to a single act alleged to have taken place some two years before the date of Mrs. Scollard's application. Character is not made or unmade by a single act. (3 Ency. of Evidence, 36–39; Jones on Evidence, sec. 149.) The alleged act referred to in the transcript cannot be made the ground for excluding the relatrix from her occupation as a nurse, for the reason that the statute was not in force at the time of the alleged commission of the act in question, and, therefore, cannot operate upon the same unless the statute be given a retrospective construction. There is nothing in the Act itself indicating that it should have a retrospective construction, and under such circumstances it should take a prospective construction only. (36 Cyc. 1205–1208; see, also, *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761.) To give the statute a retrospective operation would render its constitutionality doubtful. (Art. III, sec. 11, Constitution of Montana; Art. I, sec. 10, Constitution of the United States; *Cummings* v. *Missouri,* 4 Wall. (71 U. S.) 277; 18 L. Ed. 356; *Ex parte Garland,* 4 Wall. (71 U. S.) 333, 18 L. Ed. 366.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In December, 1913, Alise B. Scollard made application to the board of examiners for nurses to be recommended to the Governor for a license as a registered nurse, under Chapter 50, Laws of 1913. The application was refused, and proceedings in *mandamus* instituted. From a judgment awarding the peremptory writ and from an order denying them a new trial, the defendants appeal.

### ON MOTION TO DISMISS.

Appellants did not furnish any appeal bond, and the respondent insists that the appeals should be dismissed. Section 7196, Revised Codes, relieves the state, a county, a municipal corporation, or any officer in his official capacity on behalf of the state, a county, *etc.*, from furnishing an undertaking where one is otherwise required. It is insisted that the board of examiners for nurses is not a public office, and that the members are not public officers. In passing we may say that, if the members of the board acted only as private individuals in refusing Mrs. Scollard's application, then *mandamus* would not lie at all. (26 Cyc. 386.) But we do not agree with respondent's contention. In 6 Words and Phrases will be found a large number of definitions of "public office" and "public officer," from which we select the following: "A public office is the right, authority, and duty created and conferred by law, by which for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by and for the benefit of the public. The individual so invested is a public officer." (*Attorney General* v. *McGaughey*, 21 R. I. 341, 43 Atl. 646, 647.)

In 1913 the state for the first time assumed to exercise to a limited extent its police power to regulate the business or profession of nursing. It created the board of examiners for nurses, provided for the appointment of the members by the governor

for a definite term, prescribed the duties, and fixed the compensation. This is sufficient to meet the requirements of the definition.

It is said that the Act does not require a member to take an
**[2]** official oath; but it is wholly unnecessary that it should do so. The official oath required of every public officer in this state is prescribed by section 1 of Article XIX of the Constitution, and that provision is self-executing. The board of examiners for nurses is a public office, and its members are public officers. They perform duties for the state, public in character, and the extent of those duties is not of consequence in determining the quality of their acts. The motion to dismiss is overruled.

## ON THE MERITS.

It is set at rest in this state that no one has any right whatever to hold herself out or practice as a *registered* nurse, except upon such terms and conditions as the state may prescribe. (*State ex rel. Marshall* v. *District Court,* 50 Mont. 289, 146 Pac. 743.) Mrs. Scollard's application to the board was accompanied
**[3]** by affidavits of citizens that she is a person of good moral character, and it is the contention of her counsel that the board was compelled to accept such showing as conclusive, and that no trial or other investigation touching the question of her good or bad character can be had until after she is regularly registered and proceedings have been instituted to cancel her certificate, under the provisions of section 15 of the Act. But for the earnestness of able counsel in this contention we should not consider the meaning of the statute open to doubt or discussion. Chapter 50, Laws 1913, designates three classes of persons who will become subject to its provisions if they seek registration as nurses in this state: (1) Those who must take the examination; (2) certain graduates of reputable training schools; and (3) nurses registered in other states. Mrs. Scollard belongs to the second class, and, while members of class 2 or 3 are relieved from taking the examination as to proficiency, every applicant of every class is required by section 9 to furnish satisfactory evidence that she is a person of good moral character. After

a nurse is once *registered,* her license may not be revoked except upon conviction after a hearing had in proceedings instituted and carried on pursuant to section 15.   Having been *registered,* she has acquired a valuable right which the state has seen fit to protect.   But, when she applies for registration, she occupies no such advantageous ground.   She is then a mere suitor for a privilege which the state may grant or withhold at its pleasure. It has seen fit to say that an applicant presenting evidence of certain training, who is at least twenty-two years of age and of good moral character, may be *registered* and receive the sanction of the state to hold herself out as a *registered* nurse.   It has created this board of examiners for nurses for the very purpose of having practical means for determining whether a particular applicant shall be licensed, and to that extent recommended, by the state as a fit and proper person to go into the homes of respectable people and administer to the sick or afflicted.   From the necessities of the case the professional services of a skilled nurse are of the most intimate, confidential and important character.   Extreme cases often best illustrate principles.   If a veritable drug fiend, with the characteristic impulse to want everyone else to become addicted to the same vicious habit, applies for registration, must the board recommend her because she has been able to deceive a few reputable citizens into the belief that she is a person of good moral character, when the members of the board have personal knowledge or satisfactory evidence from other sources as to the actual facts?   Common sense and the instinct which discerns right from wrong prompt a negative answer in the most emphatic form.   The state does not offer to stand sponsor for such a person, and, to avoid being imposed upon as far as may be possible, has created this board for the express purpose of determining whether an applicant is a fit and proper person to receive the state recommendation. The language of section 9 of the Act is not susceptible of any other interpretation.   Satisfactory evidence of good moral character, as therein used, means evidence which satisfies the board, in the exercise of honest judgment (*State ex rel. Bray* v. *Settles,*

34 Mont. 448, 87 Pac. 445) ; and to reach a judgment the power to investigate and decide is necessarily implied. It would be unreasonable for the legislature to impose upon a board of laymen the strict rules of legal procedure which prevail in courts, and it did not do so in this instance, but left the board free to pursue its work with as little formality as possible, to the end that it might carry out efficiently the purpose of the Act. The very grant of power to the board to determine upon the question of the applicant's good character implies power to hear evidence in opposition as well as in favor of the applicant. The manner in which the evidence is to be produced is left with the board. The statute does not contemplate a trial of, or a hearing on, an application for recommendation to the governor. It might have provided for one or the other, but did not do so. It does, however, contemplate an investigation in such reasonable manner as the board may choose to adopt, and, if its decision is the result of honest judgment, it is conclusive upon an applicant who belongs to the second class.

It is elementary that *mandamus* will lie to compel the board [4] to act, but that it cannot control the board's discretion (*State ex rel. Stuewe* v. *Hindson,* 44 Mont. 429, 120 Pac. 485), and the district court is not authorized to substitute its judgment for that of the board. The only question before the trial court was: Did the board act so arbitrarily or capriciously, or abuse its discretion, to that extent that it cannot be said to have rendered an honest judgment upon Mrs. Scollard's application? The burden was upon this respondent to show that such was the fact, and, in the absence of a clear showing of abuse of discretion or a determination reached by other improper means, the court was not warranted in issuing the writ. (*State ex rel. Finlen* v. *District Court,* 26 Mont. 372, 68 Pac. 465.)

As tending to impeach the good character of Mrs. Scollard, [5] the board had before it the official stenographer's transcript of testimony given upon a hearing had in the district court of Gallatin county in a proceeding wherein Mrs. Scollard was plaintiff and her husband was defendant. That transcript

contained, among other things, the testimony of one P. A. Pender, which referred to acts of immorality on the part of Mrs. Scollard of the most degenerate sort. The board had before it also certain resolutions adopted by the Gallatin County Graduated Nurses' Association protesting against the recommendation of Mrs. Scollard for registration, upon the ground that she was addicted to the use of morphine and was not a person of good moral character. The testimony of Pender contained in the stenographer's report was to all intents and purposes a deposition, taken in another proceeding it is true, but one to which Mrs. Scollard was a party. However, the form in which it was presented was immaterial. No member of the board is authorized to administer an oath to a witness, not even in a proceeding had under section 15; but the board may accept such statements orally or in writing as the members deem material and give to them such weight as, in their judgment, they are entitled; for, as we have observed before, this is not a trial, but merely an investigation. Under section 1 the governor is constituted the licensing authority. To relieve him of the burden of making the investigation necessary to determine the qualifications which the legislature prescribed for an applicant for registration, this board was created. In passing upon the question of the character of an applicant, it acts as a mere administrative arm of the government, and may pursue its investigations through the same channels as the governor might, if the entire burden of administering the Act were cast upon him. If the members of the board chose to believe the testimony of Pender, they could not in' honor recommend Mrs. Scollard for registration. They were at liberty to believe that testimony, and apparently did so, and, with it before them, their act in refusing to recommend her cannot be charged to prejudice, such as precludes the exercise of judgment. There was not any evidence before the trial court of any failure on the part of the board to exercise a wise and honest discretion, except such as is implied from their refusal to recommend Mrs. Scollard; and,

since there was justification for the refusal, the trial court erred in its conclusion.

The judgment and order are reversed and the cause is remanded, with directions to dismiss the proceeding.

*Reversed and remanded.*

.MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

