STATE, RESPONDENT, *v.* STARK, APPELLANT.

(No. 7,452.)

(Submitted June 11, 1935.   Decided July 6, 1935.)

[52 Pac. (2d) 890.]

*Mr. Lawrence E. Gaughan,* for Appellant, argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Chris W. Demel, Mr. Philip Savaresy* and *Mr. H. C. Crippen,* for the State; *Mr. Crippen* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

In 1913 the legislature by Chapter 29 provided that only persons licensed as provided therein might engage in the business of plumbing in cities having a population of 3,000 or more. That chapter is now sections 5183 to 5193 of the Revised Codes of 1921. The Act vests the power in the mayor of such cities to appoint a Board of Plumbing Examiners of three persons— one a master plumber, one a journeyman plumber and the third the city health officer, and it requires that persons desiring to engage in the plumbing business shall apply to the board and undergo an examination for their "qualifications and fitness for carrying on the business of a master plumber or journeyman plumber, and if the applicant successfully passes the examination as prescribed by the board, then a license shall be issued to such applicant for such license." Master plumbers are required to pay a fee of $10 before taking the examination, and journeymen plumbers a fee of $2. Persons working at the trade without a license, except apprentice helpers, are guilty of a misdemeanor and upon conviction thereof shall be fined not less than $10 nor more than $100.

The defendant in the action at bar was charged with the "crime of misdemeanor" in the justice court of Yellowstone county for engaging in the plumbing business in the city of Billings, an incorporated city with a population of more than 3,000 inhabitants, without first obtaining a license. The action was carried to the district court where the defendant waived trial by jury, was tried by the court on a plea of not guilty, was

found guilty and fined $25. From that judgment the defendant appeals.

In the case of *State* v. *Wright,* 91 Mont. 427, 8 Pac. (2d) 646, the defendant was arrested and charged with the same offense alleged to have been committed by the defendant here. There the defendant challenged the constitutionality of the Plumbers' Act by demurrer. The district court sustained the demurrer and discharged the defendant, holding that the Act was unconstitutional for the reason that it vested in the Board of Plumbing Examiners powers that "are arbitrary and unlimited as to the extent and kind of examination" required before license would be granted. When the case came before this court on appeal by the state it was held that it was not an action in which the statute gave the state any right of appeal, and defendant's motion to dismiss the appeal was granted.

As respective counsel in the *Wright Case* filed briefs dealing quite fully with the constitutional questions involved, counsel in the case at bar stipulated, and this court approved, submitting this case on the oral arguments of counsel supported by the briefs in the *Wright Case.*

Defendant rests his case solely on the ground that the Plumbers' Act is invalid. It is conceded that the state may, in the exercise of its police power, regulate the business of plumbing, but defendant contends that the Act in question is invalid for other reasons in addition to that assigned by the district court.

In determining whether an Act of the legislative assembly is invalid or not, it has long been the established rule of this court that the constitutionality of any Act shall be upheld if it is possible to do so (*State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227; *Hale* v. *County Treasurer,* 82 Mont. 98, 105, 265 Pac. 6), and that a statute "is prima facie presumed" to be constitutional, and all doubts will be resolved in favor of its validity. (*State ex rel. Toomey* v. *Board of Examiners,* 74 Mont. 1, 238 Pac. 316, 320.) The invalidity of a statute must be shown beyond a reasonable doubt before this court will declare it to be unconstitutional. (*Herrin* v. *Erickson,* 90 Mont.

259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae,* 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.)

Counsel for defendant contends that the Act is unconstitutional because ''no provision is made as to when and how an examination shall be conducted; there is no provision specifying the nature of the examination to which an applicant for a license shall be subjected, nor does the statute even say that a reasonable examination shall be given; under the circumstances there is vested in the Board of Examiners an arbitrary power; no distinction is made between the two classes of plumbers; no rules of guidance are specified to control the Board of Examiners; no provision is made for any appeal to any constituted authority; no provision whatever is made for any record of any examination and none whatever need be made or kept; the Act in effect delegates legislative powers to the Board of Examiners and vests them with a discretion that may be exercised in an uncontrolled, arbitrary and discriminatory manner.''

Whatever authority the statute confers upon the board is a question of construction. If it purports to confer arbitrary power to withhold a license or to impose conditions which have no relation to the qualifications or fitness of applicants to engage in the business of plumbing, the statute would, of course, be invalid, but we do not think such a charge against the Act can be established. In substance, all the attacks made upon the Act here are comprehended by the contention that ''the Act is an unwarranted delegation of legislative power to the Examining Board of the municipality,'' and to a less extent by the contention that the Act provides for no right of review of the decision of the board.

In its governmental capacity ''a city is a creature of statute, and, in the absence of constitutional limitations, the legislature may prescribe for it such powers and privileges as it deems best.'' (*McClintock* v. *City of Great Falls,* 53 Mont. 221, 163 Pac. 99.) Cities and towns are vested with legislative pow-

ers. (*State ex rel. Great Falls Water Works* v. *Mayor of City of Great Falls,* 19 Mont. 518, 49 Pac. 15.) "A city is a political subdivision of the state for governmental purposes." (*City of Helena* v. *Helena Light & Ry. Co.,* 63 Mont. 108, 207 Pac. 337.)

Where a power is conferred upon a municipality and the mode is prescribed, such mode must be followed (*State ex rel. Daly* v. *Dryburgh,* 62 Mont. 36, 203 Pac. 508) ; but if no mode is prescribed, the power is to be exercised in such manner as municipal officials, in their discretion, shall determine upon. (*Fisher* v. *Stillwater County,* 81 Mont. 31, 261 Pac. 607 ; *Arnold* v. *Custer County,* 83 Mont. 130, 269 Pac. 396 ; *Lang* v. *City of Cavalier,* 59 N. D. 75, 228 N. W. 819 ; *Christensen* v. *Town of Kimballton,* 212 Iowa, 384, 233 N. W. 789, 236 N. W. 407.)

In the instant case the mayor is vested with the power to appoint the Board of Plumbing Examiners ; no rules are prescribed ; the "legislative will" is expressed in the Act where it directs that such a board shall be appointed ; that those who engage in the plumbing business shall take an examination to determine their fitness and qualifications ; that they must have a license before they do any plumbing ; that if they do plumbing without a license they are guilty of a misdemeanor and are subject to a fine of from $10 to $100. The "mode" of the examination and the rules to be applied are left to the discretion of the municipal officials.

"One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. This maxim, however, does not preclude the legislature from delegating any power not legislative which it may itself rightfully exercise. The legislature must declare the policy of the law and fix the legal principles which shall control in a given case ; but an administrative officer or body may be invested with the power to ascertain facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss efficiency in both provision and exe-

cution. * * * Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the purposes of a statute and various governmental powers for the more efficient administration of the laws.'' (Cooley's Const. Limitations, 8th ed., pp. 225, 226.)

Delegation of power to determine who are within the operation of the law is not a delegation of legislative power. (*State* v. *Thompson,* 160 Mo. 333, 60 S. W. 1077, 83 Am. St. Rep. 468, 54 L. R. A. 950.) Delegation of power to incorporated medical societies to appoint medical examiners to examine and pass upon the fitness of applicants to practice medicine is not invalid. (*Scholle* v. *State,* 90 Md. 729, 46 Atl. 326, 50 L. R. A. 411.) But it is essential that the legislature shall fix some standard by which the officer or board to whom the power is delegated may be governed, and not left to be controlled by caprice. (*Harmon* v. *State,* 66 Ohio, 249, 64 N. E. 117, 53 L. R. A. 618.) ''The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would stop the wheels of government.'' (*Marshall Field & Co.* v. *Clark,* 143 U. S. 649–694, 12 Sup. Ct. 495, 36 L. Ed. 294; *United States* v. *Grimaud,* 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563.)

We find in many of the states the legislature has simply indicated its will that plumbing boards shall be appointed in cities of a certain class to determine the fitness or competency of persons who engage in the business of plumbing, vesting the appointing power usually in the municipal executive, sometimes in the state board of health, and the matter is otherwise left to the discretion of the municipal authorities. Some states have more explicit rules and regulations to govern the examination than Montana, but the function of carrying out such rules and regulations is invariably delegated to local authority and usually to the Examining Board. In Arkansas, Connecticut, Indiana, Iowa, Maine and a number of other states, municipal authorities are vested with practically absolute authority to determine

qualifications and fitness. In Colorado, Illinois, Kentucky, Massachusetts, Michigan and Wisconsin the powers delegated to the Examining Board are more specific, but not much more limitation is placed on the discretion of the local board than here. The general rule that is supported by the great preponderance of authority is indicated by the following decisions: *Chicago, M. & St. P. Ry. Co.* v. *Board of Railroad Commrs.*, 76 Mont. 305, 247 Pac. 162; *State ex rel. Railroad & Warehouse Com.* v. *Chicago, M. & St. P. Ry. Co.*, 38 Minn. 281, 37 N. W. 782; *Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468, 238 Pac. 704; *United States* v. *Grimaud,* supra; *State ex rel. Winkler* v. *Benzenberg,* 101 Wis. 172, 76 N. W. 345; *Commonwealth* v. *Beaulieu,* 213 Mass. 138, 99 N. E. 955, Ann. Cas. 1913E, 1080, 1081; *State* v. *Great Northern Ry. Co.,* 100 Minn. 445, 111 N. W. 289, 10 L. R. A. (n. s.) 250.

In the case of *United States* v. *Grimaud,* supra, the court said: "While it is difficult to define the line which separates legislative power to make laws and administrative authority to make regulations, Congress may delegate power to fill up details where it has indicated its will in the statute, and it may make violations of such regulations punishable as indicated by statute. In the nature of things it was impracticable for Congress to provide such regulations for these various and varying details of management. Each reservation had its peculiar and special features and in authorizing the secretary of agriculture to meet these local conditions Congress was merely conferring administrative functions upon an agent, and not delegating to him legislative power. * * * It will not be contended that Congress can delegate to the courts or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." The opinion further quotes freely from *Union Bridge Co.* v. *United States,* 204 U. S. 364–386, 27 Sup. Ct. 367, 51 L. Ed. 523, as follows: "By the statute in question Congress declared in effect that navigation should be freed from unreasonable obstructions arising from bridges of insufficient height, weight of span or other defects. It

stopped, however, with this declaration of a general rule and imposed upon the secretary of war the duty of ascertaining what particular cases came within the rules prescribed by Congress, as well as the duty of enforcing the rule in such cases. In performing that duty the secretary of war will only execute the clearly expressed will of Congress, and will not, in any true sense, exert legislative or judicial power. * * * The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. * * * But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punishable as a public offense. * * * The secretary of agriculture could not make rules and regulations for any other purpose; * * * as to those here involved, they all relate to matters clearly indicated and authorized by Congress. * * * The secretary did not exercise the legislative power of declaring the penalty or fixing the punishment."

In the case of *Dominguez Land Corp.* v. *Daugherty,* supra, the supreme court of California said: "The line of demarcation between legislative and administrative functions is not always easily discernible, the one often running into the other. * * * The courts have even gone so far as to hold that an Act may be construed so as to read therein an implied declaration of an adequate standard whereby the administrative body or officer is to be governed. Thus in *Ex parte McManus* [previously referred to by the court] Mr. Justice Shaw in his concurring opinion said: 'The statute does not expressly prescribe any standard of qualification in the applicant. It must be construed as at least an implied declaration that no person shall be entitled to a certificate as a licensed architect, unless he has such ordinary

knowledge of the principles and science of the art or profession, and such ordinary skill in the practical application of those principles and that science, as are usually possessed by those engaged therein. It is the usual standard implied by law, where no different standard is expressed by statute." (Citing *Ex parte McManus*, 151 Cal. 338, 90 Pac. 705.)

In the case of *Chicago, M. & St. P. Ry. Co.* v. *Board of Railroad Commrs.*, supra, this court said: "The difficulty of defining the line which separates legislative power to make laws from administrative authority to make regulations has frequently been the subject of controversy. * * * We think the correct rule as deduced from the better authorities is that if an Act but authorizes the administrative officer or board to carry out the definitely expressed will of the legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the criticism that it carries a delegation of legislative power."

The contention that the Act does not specify the nature of the examination nor how it shall be conducted and no rules are provided for the guidance of the board is, in a measure, true. The contention, however, is not entirely correct. The Act does specify the "nature" of the examination when it provides that two members of the board shall be plumbers versed in modern sanitary plumbing and sewerage, and that applicants shall be examined on their fitness to engage in the business of plumbing. This is sufficient to indicate the nature of the examination. Furthermore, we think the power to do all such things is properly vested in the local municipal authorities by subdivisions 3 and 4 of section 5039, Revised Codes 1921, as amended.

When the legislature created the local Examining Board to pass upon the qualifications and fitness of persons to engage in the plumbing business; when it provided a board with a personnel capable of exercising intelligently the duties imposed; outlined, in a general way, the scope of the examination; specified that no one should engage in the business until he had successfully taken the examination; made violation of the Act a misdemeanor and fixed the penalty, we think that was such an

exclusive exercise of its legislative power on the subject as to leave nothing more to be done by local authority than is usually delegated to and done by similar boards created to perform similar functions in other matters. The Act creating the Plumbers' Board is not so replete with details as the Act creating and the statutes relating to the Railroad and Public Utility Commission. There is not the need for such detail in the Plumbing Act, but there is sufficient in the latter Act to discover the will of the legislature and ample to enable the local board to conduct such an examination as will carry the expressed legislative will into effect in a fair and reasonable manner; and when considering the contention that the Act vests arbitrary power in the local Examining Board, the rule must be kept in view that when any power is delegated by the legislature, it is not to be presumed that such power will be exercised in an unreasonable, unfair or arbitrary manner (*Murphy* v. *Johns,* 56 Mont. 134, 182 Pac. 115; *Lieberman* v. *Van de Carr,* 199 U. S. 552, 26 Sup. Ct. 144, 50 L. Ed. 305); a contrary presumption would impute to the legislature the intent to enact a vicious law open to all the attacks directed against it.

It is further contended that the Act provides for no review, by the courts, of the board's decisions. We think there is no doubt but that one aggrieved by the action of the Examining Board would, by mandamus or other appropriate proceeding, be entitled to have the board's action reviewed by the courts. In *State ex rel. Scollard* v. *Board of Examiners for Nurses,* 52 Mont. 91, 156 Pac. 124, the court, in substance, stated that if the board's action is arbitrary or capricious, such action could be reviewed by the courts in mandamus proceedings. In a case involving the power of a city to enact an ordinance to regulate rooming-houses and require a license therefor, this court said in *State ex rel. Altop* v. *City of Billings,* 79 Mont. 25, 39, 255 Pac. 11, 54 A. L. R. 1091: "This [the ordinance] does not contemplate an arbitrary exercise of power according to caprice or whim, but it does contemplate consideration and care. The power to decide who is suitable must be lodged somewhere. Who is better fitted to decide than the local officers who know

local conditions? It must be assumed they will act fairly. If they do not the courts are still open.''

The authorities cited by the defendant do not support his contention to the extent that we may say that the Plumbers' Act is unconstitutional ''beyond a reasonable doubt.'' We are, in fact, satisfied that the Act is valid. The line as to what is a delegation of legislative power, and what is not, is closely drawn in many cases, but the great weight of authority preponderates in favor of the validity of the Act.

The judgment of the district court is therefore affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.