No. 83-71

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

KARL GRANT JEPPESON,

                Plaintiff and Appellant,

        -vs-

STATE OF MONTANA, DEPARTMENT
OF STATE LANDS,

                Defendant and Respondent.

_____

APPEAL FROM:   District Court of the Twelfth Judicial District,
               In and for the County of Liberty,
               The Honorable B. W. Thomas, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        John E. Seidlitz, Jr., Chester, Montana


        For Respondent:

        David Woodgerd & Lyle Manley, Dept. of State Lands,
        Helena, Montana

_____

                        Submitted on Briefs: May 26, 1983

                                  Decided: August 4, 1983


Filed:   AUG 4 1983


                    _Ethel M. Harrison_
        _____
                        Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from a decision of the District Court of the Twelfth Judicial District, Liberty County, the Honorable B. W. Thomas presiding, denying injunctive and mandamus relief to the appellant, Karl Grant Jeppeson, and granting summary judgment to the respondent, Department of State Lands.

The following facts are taken from the District Court's findings of fact and are not in dispute.

The State of Montana owns a parcel of grazing land in Liberty County, Montana. The land is now and has been administered by the respondent Department. In 1950, this parcel was leased by the respondent to the appellant's father, Karl H. Jeppeson. The lease was renewed to the father's estate in 1960. Ten years later, the lease was changed to the name of the appellant.

The appellant has had more than a little trouble maintaining his lease since 1970. He was late with his annual rental payment to the department for the leasehold in 1973, and failed to pay the rent in 1974. Pursuant to section 81-412, R.C.M., 1947, (now section 77-6-506, MCA), the lease was canceled effective June 7, 1974. The land went unleased for two years, after which the department leased the land to another party in 1976. Shortly thereafter, the party assigned his lease to the appellant.

In 1977, appellant was again late in making his rental payment. He lost the lease in 1978 after another failure to make timely payment, but the lease was reinstated based upon appellant's affidavit stating that his payment had been made by the statutory deadline. Nevertheless, in 1980, the rent was not received at all, and the lease was canceled again. The parcel remained unleased until 1981, when a new lease was issued to Adrian and Janet Hawks. The appellant had run his livestock on the parcel up to that time, and refused to remove them, arguing that he was entitled to compensation for certain improvements made on the parcel. After lengthy negotiations, the Hawks decided to assign their lease to the appellant for the sum of

$1,500. The assignment was made on forms provided by the department for such a transaction, and was received by the department on January 29, 1982.

Because of workload problems, department employees were unable to approve the proposed assignment immediately. In addition, the department was hesitant to approve the assignment in view of appellant's history of late payments. A letter expressing these concerns was sent to appellant on March 23, 1982. In the letter, the department indicated it would not approve the assignment until the appellant could explain why his 1980 payment was late, and why he could not be reached in 1980 in regard to the late payment. A copy of this letter was mailed to the Hawks.

Appellant did not respond to the letter until April 23, 1982. However, the April 1 deadline for making payment, required by section 77-6-506, MCA, had passed, and on April 22, the department canceled the lease for failure to receive payment, and notified the Hawks of the cancellation. As the department was preparing to advertise the parcel for a new lease, the appellant filed a motion in District Court for a preliminary injunction to restrain the department from leasing the parcel. Appellant subsequently modified his complaint to request both preliminary and permanent injunctions preventing the department from leasing, and restraining it from denying assignment of the Hawks lease to him. In addition, appellant requested a writ of mandamus compelling the department to approve the assignment.

A hearing was held on June 24, 1982. The trial court denied the motion for a preliminary injunction on August 4, 1982. Afterwards, the parties entered into a stipulation that there were no factual disputes, and that the above-stated facts and exhibits introduced at trial, along with the department's April 22 letter to the Hawks, comprised the relevant facts for the case. The parties then submitted concurrent motions for summary judgment. The District Court granted the respondent department's

motion for summary judgment on November 1, 1982. The appellant contests this decision and continues to press for injunctive and mandamus relief.

The appellant believes he is entitled to relief because the trial court allegedly erred in not finding that the department acted arbitrarily and capriciously when considering the assignment of the Hawks lease. Specifically, appellant contends that the department had to act upon the assignment within a specific period of time, and that by not adhering to this limitation, it abused its discretion with respect to handling the assigment. In the alternative, appellant argues that even if the department did not have a prescribed time limit for attending to the matter, the mere lack of such a limit is itself an arbitrary and capricious act. Furthermore, appellant insists that the department was legally bound to approve the assignment in any event.

The appellant also maintains that the department acted wrongfully by failing to notify him of the rent due on the lease, and by waiting for the lease to be canceled so that the assignment would be a moot issue. Finally, the appellant contends that department added conditions for approval of the assignment that are contrary to statute.

For the reasons stated below, we reject appellant's arguments and affirm the decision of the trial court.

Initially, we consider the request for injunctive relief. The trial court correctly held that the lease in question was automatically canceled by operation of law when the rent was not paid by the statutory deadline. Section 77-6-506, MCA, provides, in pertinent part, that "[t]he rental for each succeeding year on leases hereafter issued . . . is due and payable before March 1, and if not paid by April 1 the lease is canceled." The same statute requires the department to notify the lessee of the cancellation. The land is then open to lease to other interested parties. Section 77-6-506, MCA. Thus, the department was legally obligated to cancel the Hawks lease and undertake con-

- 4 -

sideration of new applicants and their bids, regardless of any action respecting the appellant's assignment.

The request for an injunction to enjoin the respondent from issuing a new lease and denying the assignment cannot be granted. Section 27-19-103(4), MCA, provides that an injunction may not issue "to prevent the execution of a public statute by officers of the law for a public benefit." If granted, the injunction would prevent the department from carrying out the requirements of the cancellation statute. The use of an injunction to compel the department to issue the lease in appellant's name would also violate section 27-19-103(6), MCA, which forbids issuance of an injunction "to prevent the exercise of a public or private office, in a lawful manner, by the person in possession." Here, an injunction would prevent the department from cancelling the lease for nonpayment of rent and putting the lease up for bid as required by section 77-6-506, MCA.

Injunctive relief is also inappropriate on another ground. It is an old rule in Montana that title to, or possession of, a real estate interest may not be litigated in a suit for an injunction. Davis v. Burton (1952), 126 Mont. 137, 246 P.2d 236; Union Central Life Ins. Co. v. Audet (1933), 94 Mont. 79, 21 P.2d 53; National Bank of Montana v. Bingham (1928), 83 Mont. 21, 269 P. 162. An injunction is an _equitable_ remedy, and when a party is seeking to enforce a _legal_ interest in real property, then the remedy is not available unless facts and circumstances indicate that the party's legal remedies, such as an action in ejectment, are inadequate. See Stahl v. Alldrin (1952), 155 Neb. 412, 52 N.W.2d 251; Vance v. Henderson (1942), 141 Neb. 766, 4 N.W.2d 833. Even though an injunction in this case would not automatically vest title to the leasehold interest in the appellant, it would have the practical effect of doing so. And, where the practical effect of an injunction is to oust one party from possession of a real property interest and vest it in another, the remedy is still not available. Blinn v. Hutterische Society

- 5 -

(1920), 58 Mont. 542, 194 P. 140; 43A C.J.S. Injunctions §61 (1978).

The appellant has not demonstrated that his legal remedies are inadequate. And, he has not proved that his case falls within one of the exceptions to the general rule. The leasehold interest does not involve a cropping agreement with the state, see Davis v. Burton, supra, and it has not been violated by a simple trespass, see Taylor v. Nix (1938), 185 Ga. 536, 195 S.E. 416. Therefore, appellant's request for injunctive relief must be denied.

The facts of this case and weight of legal authority do not support appellant's prayer for a writ of mandamus to compel assignment of the lease. While the writ may issue "to compel the performance of an act which the law specifically enjoins as a duty . . .," section 27-26-102(1), MCA, it will not issue to compel performance of a discretionary function. State ex rel. Butte Youth Serv. Center v. Murray (1976), 170 Mont. 171, 551 P.2d 1017. A major crux of this case, then, is whether the department was under a legal obligation to approve the assignment.

It is well settled that the lands granted by the federal government to the states for the support of public schools constitute a trust, and the state is trustee of those lands. State ex rel. Thompson v Babcock (1966), 147 Mont. 46, 409 P.2d 808; Toomey v. State Board of Land Comm'rs (1938), 106 Mont. 547, 81 P.2d 407. Thus, a fiduciary duty is placed upon the Board of Land Commissioners and the Department of State Lands to manage the trust according to the highest standards. Section 77-1-202, MCA, for example, provides that the board "shall administer this trust to secure the largest measure of legitimate and reasonable advantage to the state." The department, under the direction of the board, has responsibility for leasing, managing, and otherwise disposing of these lands, section 77-1-301, MCA, subject to the trust guidelines. The nature of the department's power when administering the

trust has already been considered. In Thompson, the relator sought a writ of mandamus to compel the board and the department to invalidate certain leases on school trust lands and to issue leases to him. The District Court denied the writ, and the denial was upheld by this Court. More specifically, this Court emphasized that:

> "[i]f the 'largest measure of legitimate and reasonable advantage from the use of state lands is to accrue to the state, then the State Land Board must, necessarily, have a large discretionary power. Every facet of the Board's action cannot, and is not, explicitly laid out in the statutes or State Constitution. This view was confirmed by Justice Sanner in State ex rel. Gravely v. Stewart, 48 Mont. 347, 349, 137 P. 854, 855 (1913), where he said, 'The grant of lands for school purposes by the federal government to this state constitutes a trust [Citing cases.] and the state board of land commissioners, as the instrumentality created to administer that trust, is bound, upon principles that are elementary, to so administer it as to secure the largest measure of legitimate advantage to the beneficiary of it. To that end, and of necessity, the board must have a large discretionary power over the subject of the trust; and therefore it has been expressly given 'the direction, control, leasing and sale' of these lands, under such regulations and restrictions as may be prescribed by law. [citation omitted]." (emphasis in original.)

147 Mont. at 51-52, 409 P.2d at 811.

Appellant insists that the department is bound to approve assignments made by leaseholders. This position is inconsistent with the broad discretionary authority vested in a fiduciary like respondent and contrary to statutory provisions governing assignment. Section 77-6-208 provides only that "no assignment is binding on the state unless . . . approved by [the department]." A pertinent regulation echoes this discretionary authority. See A.R.M. section 26.3.121(1). Nowhere in the body of fiduciary principles, statutes, or regulations can there be found anything to suggest that the department's authority over approval of assignments is anything but discretionary. The department had the option of withholding approval on appellant's assignment until it had carefully examined his past status as a leaseholder. Until the assignment was approved, the Hawks were still the

lessees. Respondent's only legal duty was to procure payment of the yearly rental from the Hawks, and this it certainly attempted to do. Indeed, the appellant's request for mandamus asks that the department rescind its prior actions with respect to the lease and give the lease new life. Mandamus will not lie to correct or undo an act already performed, however erroneous the act may have been. Melton v. Oleson (1974), 165 Mont. 424, 432, 530 P.2d 466, 470; Thompson, supra, 147 Mont. at 50, 409 P.2d at 810.

As with the request for injunctive relief, mandamus would seem inappropriate in this case. Nevertheless, the appellant claims he is entitled to relief on the grounds that the department's actions were arbitrary and capricious and amounted to an abuse of discretion. According to this argument, injunctive relief is available because the respondent's actions with respect to the assignment and underlying lease were unlawful; the department cannot, therefore, claim exemption under the provisions of sections 27-19-103(4) and (6), MCA. Similarly, appellant argues that, in this instance, the action of the department constituted such an abuse of discretion as to amount to no exercise of discretion at all. When such abuse is established, this Court has held that mandamus will lie to compel the proper exercise of discretionary powers. Cain v. Dept. of Health (1978), 177 Mont. 448, 451, 582 P.2d 332, 334; Barnes v. Town of Belgrade (1974), 164 Mont. 467, 470, 524 P.2d 1112, 1113.

There is some precedent requiring the set-aside of a leasehold interest in state lands when the procedures for granting the interest have been found unlawful. See, e.g., Jerke v. State Dept. of Lands (1979), 182 Mont. 294, 597 P.2d 49. Since the appellant's request for injunctive and mandamus relief rests on essentially the same alleged wrongful acts by the department, the following discussion applies with equal force to the justification for either remedy.

At the outset, we reemphasize that the discretionary powers

vested in the respondent department are broad in scope. Abuse of discretion, on the other hand, is not subject to as broad an interpretation. This Court has held that abuse of discretion involves:

> "not merely an error in judgment, but perversity of will, prejudice, passion, or moral delinquency [citations omitted], but it does not necessarily imply wrong-doing or a breach of trust, or import bad faith [citations omitted]; it conveys, rather, the idea of acting beyond the limit of discretion [citations omitted]; the disregard of the evidence adduced [citation omitted]; the basing a decision upon incompetent or insufficient evidence [citation omitted]; an exercise of discretion to an end or purpose not justified by, and clearly against, reason and evidence [citations omitted]; a clear error in law in the circumstances [citations omitted.]"

Taylor v. County Comm'rs (1954), 128 Mont. 102, 111-12, 270 P.2d 994, 999, quoting Grant v. Michaels (1933), 94 Mont. 452, 459-60, 23 P.2d 266, 269. Especially with respect to mandamus, abuse of discretion cannot be said to exist without a clear showing that the entity being challenged failed to render a fair and honest judgment in the matter before it. See State ex rel. Scollard v. Board of Examiners for Nurses (1916), 52 Mont. 91, 98, 156 P. 124, 126. The burden is on the party attacking the board's or department's actions to prove such an abuse of discretion. Scollard, supra.

The appellant maintains that the department abused its discretion in three ways: (1) by failing to act upon the assignment in a timely manner; (2) by adding conditions for approving the assignment that do not appear in statute; and (3) by failing to notify the appellant that the rent on the land was due and payable. With respect to timeliness, appellant actually makes two arguments. First, he seizes upon a statement made by one of the respondent's employees that most assignments were acted upon within two weeks of receipt. Appellant argues that this is a hard-and-fast rule, and that by failing to act within two weeks of receipt of the assignment on January 29, 1982, the department abused its discretion. In the alternative, the appellant argues

that even if the department did not have a strict time limit rule for acting upon assignments, the mere lack of such a rule would amount to an abuse of discretion.

We reject both arguments. In the first instance, it was never stipulated by either party that respondent had a "rule" requiring a two week turnover on assignments. In fact, the employee responsible for initial review of assignments stated that the "two week review" process was aspirational and not always achievable, depending on the time taken by his superiors in the department for final approval. Furthermore, the department had a heavy workload during the period the assignment was received, and, in addition, needed more time to contact the appellant and determine what excuses he had, if any, for his history of late payments.

This Court will not disagree with the proposition that the department should act as prudently as possible with respect to the handling of lease assignments. But we find no evidence suggesting even a hint of arbitrary and capricious behavior on the part of respondent or its employees. Furthermore, the insistence on an absolute time limit for acting upon assignments is unwarranted and is contrary to the trustee's need to exercise broad discretion with respect to disposition of school lands. If adopted, an absolute rule would soon run up against the realities of tight agency budgets, staff shortages, and time constraints. Respondent is correct in asserting that "[t]here is no way that sufficient rules could be drafted in anticipation of every contingency."

We also reject appellant's argument that the respondent relied on the lack of a time limit to allow expiration of the underlying lease, thus rendering the assignment a moot issue. There was no evidence of such reliance presented at the District Court hearing, and we refuse to infer such reliance now.

Appellant's argument concerning additional and unlawful conditions attached to approval of the assignment must also be

dismissed. It seems well within the respondent's discretionary authority as a trustee to examine the appellant's record as a leaseholder and determine whether or not approval of the assignment would "secure the largest measure of legitimate and reasonable advantage to the state." Simply because the statute and regulation did not include provisions respecting the evaluation of a party's willingness and ability to make timely payments does not remove them from the list of criteria that a fiduciary could consider when acting upon a proposed assignment. Admittedly, the appellant probably does not like these conditions, but this Court will not compel a state agency to make a particular decision with respect to a matter when that agency exercises its own judgment and discretion, and has not violated any statutory provisions or engaged in fraudulent action. See State v. State Board of Equalization (1920), 56 Mont. 413, 450, 454, 185 P. 708, 186 P. 697, 699, cited approvingly in Thompson, supra, 147 Mont. at 50, 409 P.2d at 810.

Appellant's argument with respect to notice is also without merit. As a prior lessee, he knew or should have known about the statutory deadlines regarding payments. Moreover, the department was under no legal duty to give notice to the appellant, as he was not the holder of record. The real holders, the Hawks, were notified and were aware of the rent due. The appellant or the Hawks could have paid the rent before April 1 and thereby kept the lease alive while awaiting final action by the department on the assignment. Clearly, the department fulfilled its legal obligations. The appellant failed to exercise the reasonable opportunities open to him for obtaining lawful possession of the leasehold.

In sum, we find no evidence of arbitrary and capricious action on the part of the department so as to justify the extraordinary relief requested by the appellant. The judgment of the District Court is affirmed.

_____
                     Justice

- 11 -

We concur:

John Conway Harrison

Daniel J. Shea

Frank B. Morrison

_____ Justices