J. L. BACUS, Plaintiff and Appellant, v. LAKE COUNTY, a Quasi-Municipal Corporation of the State of Montana, HAROLD GUINN, RALPH MAXWELL, and H. M. HENDRICKSON, County Commissioners of Said Lake County, Defendants and Respondents.

No. 10115.

Submitted May 5, 1960. Decided August 12, 1960.

354 P.2d 1056.

Hamman & Gottwig, Polson, John D. French, Ronan, for appellant. F. N. Hamman argued orally.

J. A. Turnage, County Atty., Polson, argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of the defendants dismissing the action by plaintiff entered by the district court of the fourth judicial district in an action brought to test the constitutionality of R.C.M.1947, §§ 69-801 to 69-814, which sections generally provide for the creation and management of health districts.

This case was submitted to the district court on an agreed statement of facts. The plaintiff is a resident and taxpayer of the State of Montana and Lake County. He is a member of the Lake County Taxpayers' Organization and brings this action in his own behalf and also on behalf of the Taxpayers' Organization and all other taxpayers who may be similarly interested. The defendant, Lake County, is a quasi-municipal corporation, and political subdivision of the State of Montana. The other defendants who have been joined in this action are Harold Guinn, Ralph Maxwell, and H. M. Hendrickson who were, at the time of the creation of Public Health District No. II, the duly elected and qualified county commissioners of Lake County. Briefly stated, Lake County in the year 1953, by its county commissioners, duly and regularly, pursuant to the provisions of R.C.M.1947, §§ 69-801 to 69-814, joined with Sanders County in the creation of Public Health District No. II, and thereafter imposed and levied a tax upon all taxable property within Lake County for the purpose of appropriating funds with which to maintain and operate said Lake County's share of expense incurred in the operation of Public Health District No. II. These tax moneys were levied as a portion of and appropriated from the general fund of Lake County, Montana. The Board of County Commissioners of Lake County has for every fiscal year subsequent to April 23, 1953, so levied and appropriated tax funds for the operation of Public Health District No. II, and has levied and appropriated such tax funds for the fiscal year July 1, 1959, to July 30, 1960.

Plaintiff will hereinafter be referred to as appellant. The appellant's specifications of error resolve themselves into three main questions for our consideration on this appeal. These questions wll be considered separately.

The first question is whether sections 69-801 to 69-814 allow the creation of a quasi-political subdivision of the State of Montana, comprising two counties, without control of the county commissioners of one or either of the counties, without the vote

or approval of the taxpayers of either or both of the counties, in violation of the Montana Constitution, Art. XVI, §§ 1 and 8.

R.C.M.1947, § 69-805, provides, in essence, for the creation of health districts which may be composed of two counties or more, including municipalities, and in order to finance the same the counties and municipalities may pool their resources. There is no provision for a vote of the electors to create such health districts.

R.C.M.1947, § 69-806, provides for the creation of a board for the administration of these health districts. Appellant contends that these statutory provisions violate the Montana Constitution, Art. XVI, §§ 1 and 8.

The Montana Constitution. Art. XVI, § 1, provides:

"The several counties of the territory of Montana, as they shall exist at the time of the admission of the state into the Union, are hereby declared to be the counties of the state until otherwise established or changed by law."

The Montana Constitution, Art. XVI, § 8, provides:

"Any county or counties in existence on the first day of January, 1935, under the laws of the state of Montana or which may thereafter be created or established thereunder shall not be abandoned, abolished and/or consolidated either in whole or in part or at all with any other county or counties except by a majority vote of the duly qualified electors in each county proposed to be abandoned, abolished and/or consolidated with any other county or counties expressed at a general or special election held under the laws of said state."

Appellant contends that these constitutional provisions are violated by combining the governmental functions of one county with another county in the creation of a health district comprising both of the counties, without a vote of the electors of both of the counties. Appellant further contends that this is the creation of a quasi-political subdivision of the state which is not authorized by the Montana Constitution.

■■ This argument is without merit. A county or dis-

trict board of health cannot be classified or termed a political subdivision of the state. At most it could only be defined as a department of the state or as an agency of the executive branch of the state government. This provision for health districts embracing more than one county does not allow the creation of new political subdivisions of the State of Montana, but is only a provision providing for an effective method of cooperation among the counties of Montana with respect to health problems. However, the counties themselves are still the political subdivisions of the State of Montana which have entered into this cooperative measure.

■ The second question is whether sections 69-801 to 69-814, supra, violate the Montana Constitution, Art. III, § 27, or the United States Constitution, amend. XIV, § 1, in that there is a taking of property without due process of law. It should here be noted, as stipulated by counsel for both the plaintiff and the defendant, that nowhere in sections 69-801 to 69-814 is there a requirement or authorization for notice of the creation or intention to create the health districts or for notice of the assessment of tax for the operation of said districts.

The Montana Constitution, Art. III, § 27, provides:

"No person shall be deprived of life, liberty, or property without due process of law."

The United States Constitution, amend. XIV, § 1, provides, in part:

"* * * nor shall any state deprive any person of life, liberty, or property, without due process of law."

Appellant contends that the statute in question violates these provisions of the State and Federal Constitutions citing as authority Great Northern Ry. Co. v. Roosevelt County, 134 Mont. 355, 332 P.2d 501.

The Great Northern case, supra, had under consideration R.C.M.1947, § 11-2008, relating to the creation of fire districts wherein it was provided that "At the time of the annual levy

of taxes the board of county commissioners may levy *a special tax* upon all property within such districts for the purpose of buying and maintaining fire protection facilities and apparatus for such districts, or for the purpose of paying to a city or town the consideration provided for in any contract with the council of such city or town for the extension of fire protection service to property within such district, and such tax must be collected as are other taxes.'' Emphasis supplied.

The case held that this provision was unconstitutional since it granted the county commissioners the power to levy a special tax without notice to the taxpayers and thus deprived the taxpayers of their property without due process of law in violation of both the State and Federal Constitutions.

The statute which has been subjected to a similar constitutional attack in the case at bar is section 69-812, which provides:

''The county or district boards of health shall submit to the tax levying authorities an annual budget, at least two weeks prior to the dates specified by law for setting up official budgets. Funds for operation of full-time health departments shall be derived from the general fund of participating agencies, provided, however, if the general fund is insufficient to meet the approved budget, a levy, not to exceed one (1) mill, may be made on the assessed valuation in addition to all other taxes allowed by law to be levied on such property.''

We conclude that this statute is dissimilar to the statute which was in question in the Great Northern case, supra, and is not unconstitutional as being a deprivation of property without due process of law.

This court has recognized the difference between general taxes and special taxes in the Great Northern case, supra. The two types of taxes have been differentiated as follows: '' 'General' taxes are those imposed throughout the state or some civil division thereof for the purpose of raising revenue for the support of the government and for general purposes, and which are

levied on the ground of general public benefits, while 'special' taxes are those which are levied for a special or local purpose for the benefit of a part only of the body politic, and which rest on the supposition that a portion of the public is specially benefited in the increase of value to the property of the persons against whom the tax is levied." 84 C.J.S. Taxation § 3, p. 39.

In the Great Northern case, supra, this court, speaking through Mr. Justice Bottomly, stated at page 360 of 134 Mont. at page 504 of 332 P. 2d: "In the case at bar the statute provides for a *special tax* requiring a *special assessment* upon the property to be beneficially affected to the end that those benefited shall pay the whole cost through the special tax, the proceeds used in buying the apparatus and maintaining the fire department of the district or paying a city or town for extension of such fire protection to the district." In distinguishing Hutchins v. Board of Supervisors of Alcorn County, 227 Miss. 766, 87 So.2d 54, the court continued: "The Hutchins case, supra, clearly points out the fact that *a special tax or assessment was not to be imposed in that case.* There the cost of the improvements were to be raised by the *general taxing powers of the county.* They point out that the state law gave the property owners a right to be heard upon the valuation of his property for general taxation. So also does the law of the State of Montana in respect to general county taxes. But nowhere in this statute, R.C.M.1947, § 11-2008, is such provision made in respect to this *special tax.*" So the Great Northern case, supra, concluded that the tax imposed by the statute in question in that case was a special tax and therefore that adequate provisions for notice and hearing must be present in the statute itself to withstand the constitutional attack with respect to due process. See also In re Valley Center Drain District, Big Horn County, 64 Mont. 545, 211 P. 218; Scilley v. Red Lodge—Rosebud Irr. Dist., 83 Mont. 282, 272 P. 543; Mitchell v. Banking Corporation of Montana, 94 Mont. 183, 22 P.2d 155.

However, as can clearly be seen by the court's language it

was recognized that in the case of a *general tax* no such special provisions for notice and hearing are needed since Montana law already provides property owners with the right to be heard on the valuation of their property for general taxation. Herein lies the difference between the Great Northern case, supra, and the case at bar. The statute in question in the case at bar provides for a *general tax* where the statute in question in the Great Northern case, supra, provided for a *special tax*. Therefore, the Great Northern case, supra, has no application.

It should be borne in mind that section 69-812, provides, in part, that "the county or district boards of health shall submit to the tax levying authorities an annual budget, at least two weeks prior to the dates specified by law for setting up official budgets."

Sections 16-1901 to 16-1911, R.C.M.1947, relate to the county budget system. These sections require that each county official, elective and appointive, file with the county clerk detailed and itemized estimates of probable revenues and expenditures, required by his or her office. The county clerk then tabulates the complete expenditure program of the county for the current year and submits the same to the county commissioners (including the annual budget of the county or district boards of health). The commissioners then consider the same, make changes and additions, and such tabulation with the changes and additions constitutes the preliminary budget. Then the commissioners cause a notice to be published stating that the board has completed its preliminary budget, and that the same is on file and open to inspection, and that said board will meet on a day certain for the purpose of fixing the final budget, and that any taxpayer may appear and may be heard for or against any part of the budget. If the county commissioners then find that the general fund of the participating agencies is insufficient to meet the approved budget required for the operation of full-time health departments, a levy of not to exceed one (1) mill may be made as provided in section 69-812.

Therefore, we conclude that through other Montana statutes there are sufficient provisions for notice and hearing for the general tax authorized by section 69-812, to be constitutional and not deemed a taking of property without due process of law in violation of the Montana Constitution, Art. III, § 27, or the United States Constitution, amend. XIV, § 1.

The third question is whether sections 69-801 to 69-814 violate the Montana Constitution, Art. IV, § 1, by making an unconstitutional delegation of the authority of the legislature to a board, giving the board the power to make rules and regulations that carry criminal penalties.

Section 69-809 provides that county and district boards of health may enact rules and regulations "pertaining to the prevention of disease and the promotion of public health" in the areas of their jurisdiction, "but in no instance shall such rules and regulations be less effective than, nor in conflict with, rules and regulations promulgated by the state board of health."

Section 69-813 provides that violation of any part of this act or of the rules or regulations that are authorized thereby "shall be punished by a fine of not less than ten ($10.00) dollars nor more than five hundred ($500.00) dollars for each offense or imprisonment in the county jail not exceeding ninety (90) days." Appellant contends that these provisions are in violation of the Montana Constitution, Art. IV, § 1, since they are an unconstitutional delegation of the power of the legislature to a board or bureau.

The Montana Constitution, Art. IV, § 1, provides:

"The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

The fact that the board would have the power to make rules

and regulations, violation of which, by statute, sanction criminal penalties does not subject the statute to this constitutional attack. The rule in this respect has been stated as follows: "Prescribing of penalties is a legislative function, and a commission may not be empowered to impose penalties for violations of duties which it creates under a statute permitting it to make rules. However, the legislature may validly provide a criminal or penal sanction for the violation of the rules and regulations which it may empower administrative authorities to enact." 42 Am.Jur., Public Administrative Law, § 50, p. 355, and authorities cited therein.

In the case at bar, the fact that a violation of these rules and regulations may constitute a criminal offense is of no consequence since the *legislature* has provided this penalty by section 69-813, and the board is without the power to prescribe what the penalty will be.

However, the appellant does have a valid argument in another respect. When the legislature confers authority upon an administrative agency it must lay down the policy or reasons behind the statute and also prescribe standards and guides for the grant of power which has been made to the administrative agency. The rule has been stated as follows:

"The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature *fails to pres-*

*cribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad,* its attempt to delegate is a nullity.

"* * * On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and *its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations.*" Emphasis supplied. 73 C.J.S. Public Administrative Bodies and Procedure, § 29, pages 324, 325.

What are the standards and guides which the legislature has supplied by the statutes questioned in the case at bar? As we have already pointed out section 69-809 provides that the county and district boards of health may enact rules and regulations "pertaining to the prevention of disease and the promotion of public health" over the areas of their jurisdiction "but in no instance shall such rules and regulations be less effective than, nor in conflict with, rules and regulations promulgated by the state board of health." We do not believe that this provision is sufficiently definite to lay down proper standards for the guidance of the agency. What did the legislature mean by "prevention of disease and the promotion of public health"?

Does this only mean that the boards of health can make quarantine regulations, or could they go so far as to prescribe a series of physical exercises for the populations within their areas for the promotion of public health? May these boards make rules and regulations concerning mental health, and birth control? It would seem that the standards would allow regulation of any of these items so long as the state board of health has not acted. It must be remembered that the validity of a statute is determined by what may be done under it not by what has been done under it. State ex rel. Redman v. Meyers, 65 Mont. 124, 210 P. 1064.

In the recent Colorado case of Casey v. People, 139 Colo. 89, 1959, 336 P.2d 308, 309, the Colorado Supreme Court held un-

constitutional a statute similar to that in question in the case at bar, authorizing district boards of health to make rules and regulations, violations of which constituted misdemeanors. There, the district board of health attempted to pass a regulation requiring trailer courts to have licenses. Casey was prosecuted for not having obtained such a license while operating a trailer court. In the course of its opinion, the court stated: "As stated in 16 C.J.S., 580, Constitutional Law § 138:

" 'Executive officers, boards or commissions may not be authorized by the legislature to promulgate rules and regulations of a strictly and exclusively legislative character. The legislature may not vest executive officers or bodies with uncontrolled discretion in making rules and regulations and must establish sufficient standards for their guidance.'

"In Sapero v. State Board, supra [90 Colo. 568, 11 P.2d 555], it is stated that though the power to make a law may not be delegated, the power to determine a state of facts, upon which the law depends may be delegated." The court then refers to other Colorado authorities.

The standards which the legislature has indicated in the case at bar are insufficient and the statute is therefore unconstitutional as an invalid delegation of the power of the legislature to these boards in violation of Montana Constitution, Art. IV, § 1. The limits are much too broad as specified in the statute, and the board has actually been given arbitrary or uncontrolled discretion as to health matters with no real limits set up within which that discretion may be exercised.

In the case of Chicago, M. & St. P. R. Co. v. Board of R. R. Com'rs, 76 Mont. 305, 314, 315, 247 P. 162, 164, this court has stated:

"We think the correct rule as deduced from the better authorities is that if an act but authorizes the administrative officer or board to carry out the definitely expressed will of the Legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable

to the criticism that it carries a delegation of legislative power.''
This rule has been approved in Northern Pacific R. Co. v.
Bennett, 83 Mont. 483, 272 P. 987; Barbour v. State Board of
Education, 92 Mont. 321, 13 P.2d 225; State ex rel. City of
Missoula v. Holmes, 100 Mont. 256, 47 P.2d 624, 100 A.L.R.
581; State v. Andre, 101 Mont. 366, 54 P.2d 566; State ex rel.
Stewart v. District Court, 103 Mont. 487, 63 P.2d 141; and
Thompson v. Tobacco Root Co-Op State Grazing Dist., 121
Mont. 445, 193 P.2d 811. See also State v. Johnson, 75 Mont.
240, 243 P. 1073.

We do not disagree with this established rule as enunciated
by these Montana authorities. However, the case at bar does
not fall within the purview of this rule. In all of the cases which
support the rule as set forth in the Chicago Ry. Case, supra,
the statutes which gave the administrative agencies their
authority did so by a much more specific enumeration of the
powers which were granted to these agencies. In our examina-
tion of these authorities, we nowhere find anything close to the
general grant of authority that is made by the direction to
district boards of health of authority to enact rules and regula-
tions ''pertaining to the prevention of disease and the promo-
tion of public health'' as provided in section 69-809.

In the case of State v. Stark, 100 Mont. 365, 371, 52
P.2d 890, 892, this court has stated:

''Delegation of power to determine who are within the opera-
tion of the law is not a delegation of legislative power. * * *
But it is essential that the Legislature shall fix some standard
by which the officer or board to whom the power is delegated
may be governed, and not left to be controlled by caprice.''

We agree with this statement of the law and go further by
saying that the standard must not be so broad that the officer
or board will have unascertainable limits within which to act.
The statute in the case at bar is too broad to prescribe with
reasonable clarity the limits within which the officer or board
may act.

We recognize that there has been a relaxation of the requirement of specific standards and an allowance of more general standards for grants of power to administrative bodies in the area of police regulation, including public health. 42 Am.Jur., Public Administrative Law, § 45, and authorities cited therein. However, even in these areas we hold that there must be a more definite standard set out by the legislature than has been done in the case at bar.

It might be pointed out that sections 69-101 to 69-126 much more specifically enumerate the duties and powers of the state board of health than has been done by the statutes in question in the case at bar, respecting county and district boards of health. There are also sections to assure that a person will first have notice of his violations and a reasonable time to correct the deficiency before he is deemed guilty of a misdemeanor in the state board of health provisions. None of these provisions are present in the statutes now in question. It would seem that the provisions creating the state board of health have followed much the wiser course in complying with constitutional due process. See H. Earl Clack Co. v. Public Service Comm., 94 Mont. 488, 502, 503, 22 P.2d 1056.

Montana Session Laws of 1945, Chap. 171, § 15, provides a saving clause for the legislation in question as follows:

"If any section, subsection, sentence, clause or phrase of this act is, for any reason, held to be unconstitutional, or in conflict with any other section, part, or provision of this act, then the decision of the court shall affect only the section, subsection, sentence, clause or phrase so declared to be unconstitutional or in conflict, and shall not affect any other section, part, or provision of this act. The legislature hereby declares that it would have passed this act and each other section, subsection, sentence, clause and phrase hereof irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases to be declared unconstitutional."

This court has recognized that where a statute con-

tains a saving clause it is presumed that the valid portions would have been enacted without the invalid portions. State ex rel. City of Missoula v. Holmes, 100 Mont. 256, 47 P.2d 624, 100 A.L.R. 581. In compliance with this saving clause, we hold that only sections 69-809 and 69-813, are unconstitutional as an invalid delegation of power by the legislature to a board in violation of the Montana Constitution, Art. IV, § 1, and the remaining provisions of the statute in question are allowed to stand.

For the reasons that we have stated the order of the district court is reversed in part.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY and ANGSTMAN concur.

MR. JUSTICE ADAIR: I concur in the result but not in all that is said in the foregoing opinion.