No. 13627

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

KAREN M. DOUGLAS,

Plaintiff and Appellant,

-vs-

THOMAS L. JUDGE, Governor, et al.,

Defendants and Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Garrity and Keegan, Helena, Montana
Donald A. Garrity argued, Helena, Montana

For Respondents:

Hon. Mike Greely, Attorney General, Helena, Montana
Walter S. Murfitt, Special Assistant Attorney General,
argued, Helena, Montana

---

Submitted: June 13, 1977

Decided: AUG 22 1977

Filed: AUG 22 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Appellant brought this action in the district court, Lewis and Clark County, seeking a declaratory judgment that Chapter 533, Laws of 1975, is unconstitutional. On cross motions for summary judgment, the district court held the challenged legislation to be valid and enforceable. Appellant appeals the district court ruling to this Court.

Appellant is a citizen of the United States and the State of Montana and is a resident of Lewis and Clark County, Montana. Appellant owns both real and personal property in Lewis and Clark County, and pays taxes thereon. Appellant is also a registered elector within the county.

Respondents were at all times relevant to this action the duly elected, qualified and acting members of the Board of Examiners of the State of Montana. The Board of Examiners is the body authorized to issue and sell state revenue bonds.

Chapter 533, Laws of 1975, was enacted by the 1975 Montana Legislature. This act, now codified as Title 89, Chapter 36, R.C.M. 1947, is an act providing for the development of renewable natural resources. The purpose of this act and the policies to be promoted thereby are set forth in section 89-3601, R.C.M. 1947, as follows:

> "In the development of the natural resources of the state it is essential to distinguish between those which are and those which are not renewable; to make proper charges through taxation and otherwise for the depreciation of nonrenewable resources; and to invest a proper proportion of the tax and other revenues from nonrenewable resources in the replacement thereof with developments of renewable natural resources that will preserve for the citizens the benefit of the state's natural heritage and to ensure that the quality of existing public resources such as land, air, water, fish, wildlife and recreational opportunities are not significantly diminished by developments supported by this act. In order to finance such developments it is necessary to borrow in anticipation of the receipt of the revenues, so that replacement will not lag

behind consumption.  The purpose of this act is
to provide a procedure for borrowing in the most
economical way for this purpose, and to author-
ize the creation of debt to finance the first
stage of the program, and to describe the types of
projects, loans, and grants to be included in the
program."

Three distinct programs for the development of renewable

resources are contemplated by this act:   (1) renewable resource

development loans to farmers and ranchers, section 89-3603, R.C.M.
                              development
1947; (2) state renewable resource/grants to public agencies,

section 89-3604, R.C.M. 1947; and (3) state and local renewable

resource development loans to public agencies, section 89-3605,

R.C.M. 1947.  Only the first program is challenged by appellant

in this action and therefore, all discussion found herein spec-

ifically relates only to this program.

In furtherance of the stated purposes and policies, the

act authorizes respondents, upon the request of the Department of

Administration or the Board of Natural Resources and Conserva-

tion, to issue and sell general obligation bonds of the state in

an amount not to exceed five million dollars.  The purpose of

the bond sale is to finance the renewable resource development

program as described in and pursuant to the terms and conditions

of the act.  The full faith and credit and taxing powers of the

state are pledged for the prompt and full payment of all renew-

able resource development bonds issued pursuant to this act.

The proceeds of all renewable resource development bonds

issued pursuant to this act, other than refunding bonds, are

required to be deposited as received in a clearance fund account.

The moneys on hand in this account may be used only to pay costs

of the renewable resource development program upon the order of

the Department of Administration or the Board of Natural Resources

and Conservation.

The Board of Natural Resources and Conservation is author-

ized upon proper application and upon recommendation of the

Department of Natural Resources to make renewable resource development loans from the account established by this act to farmers and ranchers of the state who, without regard to their form of business organization:

(a) Are citizens of the United States and are citizens and residents of the State of Montana;

(b) have sufficient farming or ranching training and experience which, in the opinion of the Department, is sufficient to assure the likelihood of the success of the proposed operations; and (c) are or will become owner-operators of farms and ranches.

These private loans to farmers and ranchers may be made for any worthwhile project for the conservation, management, utilization, development or preservation of the land, water, fish, wildlife, recreational and other renewable resources in the state; and for the refinancing of existing indebtedness incurred in the expansion or rehabilitation of projects for those purposes. The loans may not exceed the lesser of $100,000 or 80 percent of the fair market value of the security given therefor, may not exceed a term of thirty years, and shall bear interest at a rate established by the Board of Natural Resources and Conservation not to exceed one percentage point greater than the prevailing interest rate on renewable resource development bonds authorized by the act. Private loans are to be secured by a lien upon the project constructed with the proceeds thereof.

By a resolution adopted December 5, 1975, the Board of Natural Resources and Conservation requested the Board of Examiners to issue and sell bonds of the state to implement this act. This action was filed thereafter and the sale and issuance of the bonds has been stayed during the pendency of this appeal.

Three issues are before this Court on appeal:

(1) Whether the use of the bond moneys authorized by

Chapter 533, Laws of 1975, for the purpose of lending money to private individuals is a violation of Article VIII, Section 1, 1972 Montana Constitution, as authorizing the levy of taxes for other than a "public purpose"?

(2) Whether the use of the proceeds of said bonds for loans to private individuals violates Article V, Section 11, 1972 Montana Constitution, as an appropriation to a private individual not under control of the state?

(3) Whether Chapter 533, Laws of 1975 constitutes an invalid delegation of legislative authority to the Department of Natural Resources and Conservation?

Article VIII, Section 1, 1972 Montana Constitution provides:

"Taxes shall be levied by general laws for public purposes."

The crux of this issue is a determination of what is a "public purpose" within the framework of this action.

The clear purpose of this act is to provide for the development of renewable resources in order that future generations of Montanans may enjoy such resources.

In view of the mandate of Article IX, 1972 Montana Constitution that: "The state and each person shall maintain and improve a clean and healthful environment in Montana for present and future generations" we feel the purpose of this act is a "public purpose". Furthermore, we have previously stated that " * * * What is a 'public purpose' is a question primarily for legislative determination, with which we will not interfere unless there has been a clear abuse of power. * * *" Willett v. State Board of Examiners, 112 Mont. 317, 322, 115 P.2d 287; Huber v. Groff, ____Mont.____, 558 P.2d 1124, 33 St.Rep. 1304. We find no hint of such abuse of power in the instant case.

Appellant further charges that the renewable resource development act violates Article V, Section 11(5), 1972 Montana

- 5 -

Constitution. This section provides:

> "No appropriation shall be made for religious, charitable, industrial, educational or benevolent purposes to any private individual, private association, or private corporation not under control of the state."

In effect, appellant argues that the sale of the renewable resource development bonds and the lending of the proceeds therefrom to farmers and ranchers constitutes an appropriation of money for persons not under the control of the state.

There can be no doubt that Article V, Section 11(5), 1972 Montana Constitution, prohibits the appropriation of funds for the use of any private individual, association or corporation not under state control. We have previously held, however, that the sale of revenue bonds in order to raise money for residential loans to low income citizens under the supervision of the Montana Housing Board, a public corporation, was not a violation of this section. Huber, supra. We are confronted with a similar situation herein and the result must be the same.

Initially it is important to recognize that the funds in question herein are not appropriated for the use of private persons, corporations or associations. The funds are appropriated for the use of the Department of Natural Resources and Conservation. This department is then in turn directed by the renewable resource development act to dispose of these funds as directed by this act.

All funds derived from the sale of the renewable resource development bonds are to be deposited in the clearance fund account. Sections 89-3606 and 89-3609, R.C.M. 1947. These moneys are to be used by the Board of Natural Resources and Conservation to make loans to farmers and ranchers for the development and preservation of renewable resources. The loans may be made only upon the proper application and recommendation of the Department of Natural Resources and Conservation. Section 89-3603, R.C.M. 1947.

- 6 -

Total control over the granting of these loans is vested in the Department of Natural Resources and Conservation. We hold that sufficient control over the appropriated funds is vested in the state and the mandate of Article V, Section 11(5) is met.

Finally, appellant assails this act on the grounds of an unconstitutional delegation of legislative power to the Board of Natural Resources and Conservation since the legislature failed to establish adequate standards and guides for the determination of projects eligible for renewable resource development loans.

When the Legislature confers authority upon an administrative agency, it must lay down the policy or reasons behind the statute and also prescribe standards and guides for the grant of power which has been made to the administrative agency. Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056. The following general rule found in 73 C.J.S. Public Administrative Bodies and Procedure, § 29, pp. 324, 325, has been often cited by this Court:

> "The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad, its attempt to delegate is a nullity.
>
> " * * * On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations." (Emphasis supplied.)

- 7 -

Bacus, supra; City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539; Huber, supra.

What are the standards and guides supplied to the Board of Natural Resources and Conservation to be used in its determination of projects eligible for renewable resource development loans? Section 89-3603(3) authorizes the Board of Natural Resources and Conservation to make loans to farmers and ranchers " * * * for any worthwhile project for the conservation, management, utilization, development, or preservation of the land, water, fish, wildlife, recreational and other renewable resources in the state * * *". The act further specifies the eligibility requirements of prospective borrowers, maximum loan limits, maximum repayment periods and requires the establishment of a lien in favor of the state upon the project.

The Montana rule to be used in the evaluation of the validity of delegations of power to administrative agencies was carefully analyzed in Bacus at pp. 80, 81, where we stated:

> "In the case of Chicago, M. & St. P. R. Co. v. Board of R. R. Com'rs, 76 Mont. 305, 314, 315, 247 P. 162, 164, this court has stated:
>
> "'We think the correct rule as deduced from the better authorities is that if an act but authorizes the administrative officer or board to carry out the definitely expressed will of the Legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the criticism that it carries a delegation of legislative power.' This rule has been approved in Northern Pacific R. Co. v. Bennett, 83 Mont. 483, 272 P. 987; Barbour v. State Board of Education, 92 Mont. 321, 13 P.2d 225; State ex rel. City of Missoula v. Holmes, 100 Mont. 256, 47 P.2d 624, 100 A.L.R. 581; State v. Andre, 101 Mont. 366, 54 P.2d 566; State ex rel. Stewart v. District Court, 103 Mont. 487, 63 P.2d 141; and Thompson v. Tobacco Root Co-Op State Grazing Dist., 121 Mont. 445, 193 P.2d 811. See also State v. Johnson, 75 Mont. 240, 243 P. 1073.
>
> "We do not disagree with this established rule as enunciated by these Montana authorities. However, the case at bar does not fall within the purview of this rule."

The Court in _Bacus_ continued by laying down the following rule to be used to determine the sufficiency of guidelines laid down by legislative enactments:

> "In the case of State v. Stark, 100 Mont. 365, 371, 52 P.2d 890, 892, this court has stated:
>
> "'Delegation of power to determine who are within the operation of the law is not a delegation of legislative power. * * * But it is essential that the Legislature shall fix some standard by which the officer or board to whom the power is delegated may be governed, and not left to be controlled by caprice.'
>
> "We agree with this statement of the law and go further by saying that the standard must not be so broad that the officer or board will have un-ascertainable limits within which to act."

This rule has been followed closely by a number of subsequent cases. Pattie v. Oil & Gas Cons. Comm'n, 145 Mont. 531, 402 P.2d 596; State ex rel. Bennett v. Stow, 144 Mont. 599, 399 P.2d 221; City of Billings v. Smith, 158 Mont. 197, 490 P.2d 221.

The standards and guides laid down by this act prove to be insufficient when analyzed by the _Bacus_ test. In effect, the only limit on the power to loan money for a certain project is the Board of Natural Resources and Conservation's subjective determination of whether a project is worthwhile. The parameters which define a project eligible for the loans contemplated by this act must be more clearly defined. In its present form, insufficient guidelines are provided to the Department of Natural Resources and Conservation in order for it to fully know its rights and obligations under this act.

The constitutional infirmity discussed above relating to the loan program to farmers and ranchers is not present in the remaining two programs contemplated by this action. Section 89-3604, which deals with state renewable resource grants to public agencies, provides:

> "The department of administration may recommend to the governor that grants from the renewable

resource development account * * * be made to any department, agency, board, commission, or other division of state government. Unless specifically authorized by the legislature, no bond proceeds shall be used for the purpose of making grants * * *."

This section further provides:

"The governor shall submit those grant proposals having his approval to the legislature. * * * Those grant proposals approved by the legislature shall be administered by the department."

Section 89-3605, R.C.M. 1947, which deals with state and local renewable resource development loans, provides:

"The department of administration may recommend to the governor that loans be made * * * to any department, agency, board, commission or other division of state government or to any city, county, or other political subdivision or local government body of the state."

Again, legislative approval of these loans is required.

In the programs contemplated by sections 89-3604 and 89-3605 strict control is maintained by the legislature over the disbursement of funds from this program in the form of grants or loans. No unconstitutional delegation of legislative power is present herein.

We therefore, reverse the judgment of the district court and remand this matter with instructions to declare those portions of Title 89, Chapter 36, R.C.M. 1947, which provide for renewable resource development loans to farmers and ranchers unconstitutional as an unlawful delegation of legislative power.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 10 -