MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent.
I find no real problem with the procedural and factual discussion found in the majority opinion. My first disagreement begins with whether a guarantee is an investment or a debt.
In holding a guarantee to be a debt, the majority relies on Webster’s definition of “investment” as being “the outlay of money usually for income or profit; capital outlay.” Some reliance is also placed upon Section 28-11-101, MCA, which provides a guarantor agrees to answer for the debt of another.
The majority fails to discuss the October 18, 1984, informal opinion of the Attorney General determining that a guarantee of a bond is a security and the purchase of a security is an investment; therefore, the guarantee of a bond is an investment. The opinion states:
“Neither ‘guarantee’ nor ‘investment’ is defined in the Montana Code. However, Black’s Law Dictionary 741 (5th Ed. 1979), defines ‘investment’ as ‘to purchase securities of a more or less permanent *488 nature . . Security is defined by the Montana Code as the guarantee of a bond. Section 30-10-103(11), MCA.”
The majority opinion also ignores the obvious - there is less risk associated with a guarantee of a bond than with the issuance of a bond. The State may collect from a solvent principal any money expended by the State as guarantor. Furthermore, according to Section 17-6-308(2), MCA, the guarantee must provide that the board is fully subrogated to the rights of the obligee under the bond. A bond is not a debt under Section 17-5-1523, MCA. This was affirmed in Huber v. Groff (1976), 171 Mont. 442, 558 P.2d 1124. If a bond is not a debt surely a guarantee of a bond is not a debt.
Finally, a guarantee is a contingent liability. Doorly v. Butte and Western Silver Mines (1924), 71 Mont. 529, 533, 230 P. 779, 780. The guarantee depends on a future uncertain event, the failure of the principal to pay the debt. Contingent liabilities are not debts. In Hanson v. City of Havre, et al., (1941), 112 Mont. 207, 212, 114 P.2d 1053, 1056, this Court said:
“The possibility that part of the bonds may have to be paid with monies obtained from the revolving fund which in turn is created by a tax levy on the property of the city does not create a city debt but is merely an arrangement whereby the city, through the revolving funds, loans money to the district, and for which it holds security in the form of a lien.”
The majority opinion finds the statutory scheme here at issue to be unconstitutional because:
1) It uses coal tax monies for private purposes, as opposed to public purposes;
2) It gives private individuals appropriations for industrial and benevolent purposes; and
3) It violates the Unified Investment program by allowing guaranties of private obligations.
This sweeping holding by the majority opinion is not supported by authority and runs contrary to well established law in this state. In Grossman v. State of Montana (1984), [209 Mont. 427,] 682 P.2d 1319, we said:
“The constitutional provision is not violated because the legislature may in making appropriations or other provisions in some way benefit incidentally various private individuals, associations or corporations not under the control of the state. As long as the provisions relating to the expenditure of the funds derived from the proceeds of the bonds are under the control of the state, the *489 constitutional mandate [No appropriations shall be made for religious, charitable, industrial, educational, or benevolent purposes to any private individual, private association, or private corporation not under control of the state] is satisfied.”
Likewise, in Huber, supra, the appropriations were found to go to a public purpose despite benefit to private homeowners, because the Housing Board, which controlled the money, was a public corporation, not a private corporation. We said: “It received all its powers directly from the legislature and its duties and responsibilities are set out clearly by the statute which created it.” 171 Mont. at 457. The same can be said about the Montana Economic Development Board in this instance. Therefore, under relevant precedent, the purpose of the legislation is public, not private.
Likewise, the coal tax money is going to a public purpose. Our language in Grossman is instructive. We said:
“The question of whether a particular purpose for which taxes may be levied and collected is a public purpose is for the legislature in the first instance, and the courts will indulge very reasonable presumption in favor of the legislative decision in this respect. Lewis and Clark County v. Industrial Accident Board (1916), 52 Mont. 6, 155 P. 268.”
Grossman, 41 St.Rep. at 822.
Unfortunately, the effect of the majority opinion casts serious doubt on whether any different program could pass constitutional muster.
The plaintiff contends that S.B. 349 is not a valid appropriation in that it does not specify a fixed amount of loans or guarantees that may be made by the Board and therefore does not comply with Article VIII, Section 14, of the 1972 Montana Constitution which provides:
“Except for interest on the public debt, no money shall be paid out of the treasury unless upon an appropriation made by law and a warrant drawn by the proper official in pursuance thereof.”
Defendant argues that an appropriation by the legislature is not required to validly authorize the In-State Investment Fund to be invested in a guarantee or loan as contemplated by S.B. 349 in that an investment is neither a debt nor an expenditure.
Twenty-five percent of the coal severance tax trust fund constituting the in-state investment fund has been appropriated by act of the legislature. The defendant argues that the investment thereof, as opposed to the expenditure of the principal, does not require an appro *490 priation. I agree. Just as a legislative appropriation is not required each time the Board of Investments invests each of the funds subject to its control under the Unified Investment Program, neither should one be required each time the Montana Economic Development Board purchases a loan or issues its guarantee.
The majority opinion fails to discuss the important constitutional issue of whether the legislature unconstitutionally delegated its authority to the Board in allowing it to set the limits of liability. The test is found in Douglas v. Judge (1977), 174 Mont. 32, 39, 568 P.2d 530, where this Court said:
“. . . a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation.”
Here the Board has been given specific guidelines for the investment of the in-state investment fund. Investments from the fund should:
a) diversify, strengthen and stabilize the Montana economy,
b) increase Montana employment and business opportunities,
c) maintain a clean and healthful environment, and
d) give preference to business investments that
i) are for locally owned enterprises that are either expanding or establishing new operations;
ii) provide jobs that will be substantially filled by Montana residents;
iii) encourage or benefit the processing, refining, marketing and innovative use and promotion of Montana’s agricultural products; or
iv) benefit small and medium-sized businesses.
Section 17-6-309, MCA.
With respect to amounts, the Legislature has prohibited the use of the fund for:
“a) direct loans;
“b) investments that would result in one business enterprise receiving a benefit from or incurring a debt to the fund in excess of 10% of the prior fiscal year’s coal severance tax revenue deposited in the fund; and
“c) participation in loans to an extent greater than 80% of the loan.”
Sections 17-6-310 through 312, MCA.
*491 I believe the guidelines are sufficiently definite and the delegation is lawful. In Grossman v. State of Montana, supra, we said:
“Here the enactments of the legislature are complete and delegate to the Board of Natural Resources and Conservation and the Department of Natural Resources and Conservation administrative authority which is sufficiently clear, definite and certain to enable the agencies to know their respective rights and obligations. Huber v. Groff (1976), 171 Mont. 442, 558 P.2d 1124; Montana Milk Control Board v. Rehberg (1962), 141 Mont. 149, 376 P.2d 508. Determinations of economic and environmental feasibility are far more appropriate in the administrative sector than in the legislative branch. There is nothing improper, constitutionally or otherwise, in the legislature making its authorizations contingent upon administrative decisions properly made in the executive side of the state government.”
I find Grossman to be controlling here. We should determine that the delegation of authority is constitutional.
The plaintiff had the burden of persuasion in this case. He must show beyond a reasonable doubt that S.B. 349 violates some specific requirement of the Montana Constitution. If the constitutionality of an act is doubtful the court should resolve all doubts in favor of the validity of the act. Tipton v. Erickson (1933), 93 Mont. 446, 19 P.2d 227. The only troublesome feature I find is administrative rule, A.R.M. Section 8.97.413. After quoting the administrative rule the majority opinion states that:
“The potential liability of the state is for the full amount of all guaranties made by the Board which can be as great as two times the amount of the in-state investment fund.”
The administrative rule can not invalidate the statutory scheme. The heavy presumption in favor of constitutionality has not been overcome by plaintiffs. If the majority wished to find the administrative rule to be an improper construction of the statutes it should have done so but should have preserved the integrity of the statutes themselves.
Under previous decisions of this Court herein cited the basic statutory framework passes constitutional muster. I would issue a declaratory judgment upholding the statutory scheme.